Harper, J.
delivered the opinion of the Court.
It is true that the holder of a note, or bill, payable to bearer, or indorsed in blank, is prima facie the owner, and payment to him will be good. If a bill, or note, be lost, or stolen, or, by equal reason, obtained from the true owner by fraud, payment will be good, if the maker, or drawer had not notice of the circumstances. If he 'have notice, however, he pays at his peril, if it shall turn out, that the holder had no title. Lovell v. Martin, 4 Taunt. 799. If the pretended husband Craig, imposed him self on the plaintiff as a single man, and got possession of the notes in consequence of the fraudulent marriage, that would give him no title to them. And if defendant had paid them, knowing that he had obtained them by virtue of the pretended marriage, when he had a former wife living, he would be compelled to pay them over again. If Watts took the notes, knowing the same circumstances, though for a valuable consideration, he could have no better title than Craig, and the same rule would apply to the defendant making payment to him.
There is no doubt but that the defendant had sufficient knowledge at the time he made payment to Watts; and the case turned on the question, whether Watts had notice at the time he received the transfer. There was some evidence of this, and we think it ought to have been submitted to the jury.
I do not think the circumstance of Watt’s receiving the transfer after the note became due, of itself sufficient to affect him with notice in a case of this sort. It is said, that in case of a bill lost after it becomes due, the true owner may sue at law, without offering an indemnity, because the party could never be compelled to pay it to a holder, who became such after it was due. Chitty on Bills, 172-3. But it has never been decided, I believe, if he should pay it to a holder who acquired it when due, without actual notice, that he would be compelled to pay it over again. If he could, it must be on the ground, that the bill being presented after due by a person, who was pot the original payee, it was his duty to inquire, and ascertain, how he *302 came by it. But it would seem much more reasonable, to rer quire the payee or true owner to give notice of the loss to the party liable to pay. The person taking the transfer of a bill, or note after due, from a party not an original party to it, may, perhaps, in case of a lost note, be bound to inquire into his title. But in this case, it does not appear that Watts could have obtained information by inquiring. The plaintiff probably was not aware of the fraud that was practised on her by Craig, and would have acquiesced in the transfer; and so it would be in other cases of fraud not yet discovered. This circumstance might, however, have gone with the other evidence to the jury-
The presiding Judge states that he charged the jury, that if Watts was a bona fide holder, he was intitled to receive payment. This was undoubtedly correct; but it does not seem to have been fairly submitted to the jury, that Watts’ bonafides depended on his having notice, that Craig had a former wife living, and acquired the notes by his pretended marriage. The Judge states, that he told the jury, that Craig was “united to the plaintiff by a marriage in fact; that she acknowledged him as her husband, and held him out to the world as such; and that it did not lie in the mouth of either to repudiate the other, and deny the legality of the marriage, to the end of defeating the vested rights of third persons, acquired by dealing with them in the character of husband and wife.” If the plaintiff had not been united to Craig by the form of marriage, or had known that he had another wife living, and held him out to the world as her husband, these remarks would be perfectly just; she would be estopped by her fraud on the community. But they cannot apply, when she was herself the subject of imposture ; and we think were calculated to mislead the jury. If Craig, in virtue of his pretended marital rights had sold her personal property, other than negotiable papers, would her legal title have been divested ?
If the testimony of the witness Snow, were credited, and the plaintiff were shewn to have delivered the note to Craig for the express purpose of being sold, that'could make no difference, if she was induced to do so by fraud, and in confidence that he was her husband. The question would still be, whether the purchaser had sufficient notice of the .fraud.
*303 We do not think it necessary to give any opinion as to the admissibility of Craig’s declarations. If his first wife was shewn to be living in 1824, the presumption is that she continued to live, unless her death were shewn, or seven years had elapsed without her being heard of. The motion for a new trial is granted.